IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED CALL NUMBER 484-280-5006, THAT IS STORED AT PREMISES CONTROLLED BY AT&T | No. 24-MJ-443<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Benjamin Hallowell, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.  I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) for information about the location of a cellular telephone assigned call number 484-280-5006 ("SUBJECT PHONE"), that is stored at premises controlled by AT&T, a wireless telephone service provider headquartered at 11760 U.S. Highway 1, Suite 300, North Palm Beach, FL, 33408.

2.  The information to be searched is described in the following paragraphs and in Attachment A, and the information to be seized is described herein and in Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

3.  Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. See 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. See 18 U.S.C. § 3123(b)(1).

4.      I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant.  I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI"), Philadelphia Field Division and have been employed by the FBI since February 2013.  I have received specialized training from the FBI, including training in the investigation and identification of narcotics traffickers and violent gangs.  During my tenure with the FBI, I have been assigned to the Safe Streets Task Force of the FBI Anchorage Division and the High Intensity Drug Trafficking Area ("HIDTA")/Safe Streets Violent Drug Gang Task Force ("SSVDGTF") of the Philadelphia Division, which investigate, among other violations of federal law, violent drug gangs and criminal organizations including those involved in the importation, distribution and manufacturing of controlled substances, Hobbs Act violations, and homicides and shootings resulting from the drug trade.  As an agent, I have investigated numerous firearms violations, drug violations, Hobbs Act violations, and other related crimes.  I have conducted physical and electronic surveillance, debriefed confidential sources, analyzed information obtained from court-authorized search warrants, and participated in the drafting and execution of search warrants involving these matters.  I know that drug traffickers utilize communication devices to facilitate and further their drug trafficking activities by using them to arrange meetings, discuss transactions, and to communicate about drug trafficking activities and operations.  Prior to working with the FBI, I was a Geospatial Intelligence Analyst with the National Geospatial-Intelligence Agency (NGA) from 2006 to 2013.  My work with them included two deployments to Iraq and two deployments to Afghanistan where I was embedded with intelligence units of the military and other government agencies which supported both strategic and tactical military

operations and intelligence operations. A significant part of my work consisted of geo-locating phones and locating targets associated with those phones. As part of my regular duties, I have worked several investigations that have involved the analysis of both current and historical cellular telephone data/records.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. Based on the facts set forth in this affidavit, there is probable cause to believe that Moses GOODMAN has violated 21 U.S.C. §§ 841(a) and 841(b)(1)(C) (possession with intent to distribute methamphetamine). On February 21, 2024, a federal grand jury sitting in the Eastern District of Pennsylvania returned an Indictment in Case Number 2024-CR-64 charging GOODMAN with the above violation, and a warrant dated February 21, 2024 has been issued for GOODMAN's arrest. There is also probable cause to believe that GOODMAN is the user of the SUBJECT PHONE, and that the location information described in Attachment B will assist law enforcement in arresting GOODMAN, who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

7. The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. *See* 18 U.S.C. § 2711(3)(A)(i).

**PROBABLE CAUSE**

8. In or about the fall of 2021, law enforcement conducted an investigation into Moses GOODMAN. During the investigation, law enforcement conducted several recorded controlled purchases of controlled substances from GOODMAN. Some of these controlled purchases took place at or in the vicinity of GOODMAN's residence at 754 Railroad Street in Catasauqua, Pennsylvania, 18032. On December 15, 2021, law enforcement executed a federal search warrant at GOODMAN's residence. Prior to executing the search warrant, law enforcement encountered GOODMAN on the street. During this interaction, GOODMAN was provided with his *Miranda* rights and then agreed to show law enforcement the location of controlled substances within his residence. GOODMAN and law enforcement returned to his residence, where GOODMAN showed law enforcement the location of various controlled substances. Laboratory testing confirmed that the presumed methamphetamine seized from GOODMAN's residence was, in fact, 143.239 grams (+/- 8.899 grams) of methamphetamine, a Schedule II controlled substance.

9. On February 26, 2022, Catasauqua Police Department (CPD) were dispatched to 754 Railroad St., Catasauqua, PA 18032 to respond to a domestic disturbance. Inside the residence, CPD encountered and spoke to GOODMAN and Ida Davis. Davis is known to be GOODMAN's domestic partner. GOODMAN and Davis spoke with police, and GOODMAN provided his phone number as 484-280-5006 (SUBJECT PHONE).

10. On February 21, 2024, a federal grand jury sitting in the Eastern District of Pennsylvania returned an Indictment in case number 2024-CR-64 charging GOODMAN with violating 21 U.S.C. §§ 841(a) and 841(b)(1)(C) (possession with intent to distribute methamphetamine). A warrant for GOODMAN's arrest issued that same day.

11. On February 27, 2024, FBI served AT&T administrative subpoena number 943126 requesting subscriber information and historical call detail records (tolls) for SUBJECT PHONE. That same day, AT&T returned the requested information. Records showed that SUBJECT PHONE was registered to Moses GOODMAN. Analysis of the returned records showed that from January 1, 2024 to February 27, 2024, the top contact – the most frequently contacted phone number – of SUBJECT PHONE was 484-764-4274.

12. On March 1, 2024, FBI served T-Mobile administrative subpoena number 943889 requesting subscriber information for phone number 484-764-4274. That same day, T-Mobile returned the requested subscriber information, which showed that 484-764-4274 was registered to Ida Davis, GOODMAN's domestic partner. In my training and experience, it is common for the top contact of an actively used phone to be the phone user's domestic partner.

13. For the reasons listed above, including that SUBJECT PHONE is listed as GOODMAN's phone in a police report, that SUBJECT PHONE currently is registered to GOODMAN, and that the top contact of the SUBJECT PHONE in early 2024 is the phone number registered to Ida Davis, believed to be GOODMAN's domestic partner, I believe the SUBJECT PHONE currently is being utilized by GOODMAN. I also believe that the requested information associated with the SUBJECT PHONE will assist the Federal Bureau of Investigation ("FBI") and other law enforcement in locating the SUBJECT PHONE and Moses GOODMAN, a person to be arrested.

14. Due to the location of GOODMAN's residence, physical surveillance is extremely difficult and would likely not lead to the arrest of GOODMAN. GOODMAN's residence is in a residential neighborhood at the intersection of two small roads with very little parking. In my training and experience, residents quickly identify new vehicles in areas like this

and often confront the occupant of the surveillance vehicle. Individuals in these areas often become wary of unknown vehicles and people. Individuals like GOODMAN who are or have been engaged in criminal activity such as drug trafficking may then become cautious, remain inside, or otherwise change patterns of behavior, making it more difficult to apprehend GOODMAN.

15. The requested historical records will also enable FBI and law enforcement to identify patterns of activity for GOODMAN. This will identify general areas GOODMAN frequents and GOODMAN's frequent contacts, both of which will assist in locating GOODMAN.

16. Based on my training and experience, and for all the reasons set forth herein, probable cause exists to believe that the location information described in Attachment B will enable the FBI and other law enforcement to locate and arrest the GOODMAN and is relevant to an ongoing investigation, as described above.

**Information about AT&T**

17. In my training and experience, I have learned that AT&T is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers

covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

18. Based on my training and experience, I know that AT&T can collect E-911 Phase II data about the location of the SUBJECT PHONE, including by initiating a signal to determine the location of the SUBJECT PHONE on AT&T's network or with such other reference points as may be reasonably available.

19. Based on my training and experience, I know that AT&T can collect cell-site data on a prospective basis about the SUBJECT PHONE. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as AT&T typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

20. Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device,

the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

21.  Based on my training and experience, I know that wireless providers such as AT&T typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as AT&T typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT PHONE's user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

22.  Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41. The proposed warrant will also function as a pen register order under 18 U.S.C. § 3123 authorizing

the installation and use of a pen register and/or trap and trace device to record, decode, and/or capture certain information in Attachment A for each communication to or from the SUBJECT PHONE, without geographic limit, for a period of thirty (30) days pursuant to 18 U.S.C. § 3123(c)(1).

23. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the SUBJECT PHONE would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

24. I further request that the Court direct AT&T to disclose to the government any information described in Attachment B that is within the possession, custody, or control of AT&T. I also request that the Court direct AT&T to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with AT&T's services, including by initiating a signal to determine the location of the SUBJECT PHONE on

AT&T's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

25. Because the warrant will be served on AT&T, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

26. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, and flee from prosecution.

Respectfully submitted,

/s/ *Benjamin Hallowell*
BENJAMIN HALLOWELL
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on March 12, 2024.

/s/ PAMELA A. CARLOS
HON. PAMELA A. CARLOS
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

This warrant applies to the cellular telephone assigned call number 484-280-5006 (the "SUBJECT PHONE"), as well as records and information associated with the SUBEJCT PHONE, that are in the custody or control of AT&T (the "Provider"), a wireless communications service provider headquartered at 11760 U.S. Highway 1, Suite 300, North Palm Beach, FL, 33408.

# ATTACHMENT B

## Particular Things to be Seized

**I. Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the SUBJECT PHONE listed in Attachment A to be utilized to effect the arrest of MOSES GOODMAN and in furtherance of a criminal investigation, specifically:

   a. The following historical information about the customers or subscribers associated with the SUBJECT PHONE for the time period February 12, 2024 to the present:

      i. Names (including subscriber names, user names, and screen names);

      ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

      iii. Local and long distance telephone connection records;

      iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

      v. Length of service (including start date) and types of service utilized;

      vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

 vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

 viii. Means and source of payment for such service (including any credit card or bank account number) and billing records;

 ix. Precise location data such as NELOS and Timing Advance data; and

 x. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the SUBJECT PHONE, including:

  (A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

  (B) information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received.

b. All information about the location of the SUBJECT PHONE described in Attachment A for a period of thirty days, during all times of day and night, including:

 i. "Information about the location of the SUBJECT PHONE" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A, and precise location data such as NELOS and Timing Advance data.

 ii. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of AT&T, AT&T is required to disclose the Location Information to the government. In addition, AT&T must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with AT&T's services, including by initiating a signal to determine the location of the SUBJECT PHONE on AT&T's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

c. Pen Register / Trap and Trace device with prospective cell site information or data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the SUBJECT PHONE during any voice, SMS, and/or data transmission, including but not limited to engineering data which would include, but not be limited to timing advance data, PCMD (Per Call Measurement Data), RTT Reports, TrueCall Data and/or NELOS/LOCDBOR Reports.

d. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II. Information to be Seized by the Government

All information described above in Section I that will assist in arresting MOSES GOODMAN, who was charged with violating 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) on February 21, 2024, is the subject of an arrest warrant issued on February 21, 2024, and is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

# CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by AT&T, and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of AT&T. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

    a.    all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of AT&T, and they were made by AT&T as a regular practice; and

    b.    such records were generated by AT&T's electronic process or system that produces an accurate result, to wit:

        1.    the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of AT&T in a manner to ensure that they are true duplicates of the original records; and

        2.    the process or system is regularly verified by AT&T, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____    _____
Date                                                    Signature